Filed 9/18/23  In re A.T. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.T. et al., Persons Coming Under the Juvenile Court Law. | B322205 |
| | (Los Angeles County Super. Ct. No. 22CCJP01716A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.T.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Affirmed.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent Los Angeles County Department of Children and Family Services.

Paul Couenhoven, under appointment by the Court of Appeal, for Respondent M.G.

Alejandro T. (Father) appeals the juvenile court's dependency jurisdiction findings and disposition order regarding his daughters A.T. and G.T. (collectively, Daughters),[1] who were living with their mother Marissa G. (Mother) when dependency proceedings commenced. The court took jurisdiction over the children after finding Father abused alcohol and engaged in domestic violence with his current wife, Bobbie F. (Bobbie). The court then terminated jurisdiction with an order giving Mother full custody of the children and directing monitored visitation for Father. In this appeal from the order, Father does not challenge the court's termination of dependency jurisdiction. Instead, he only asks us to decide whether substantial evidence supports the jurisdiction findings and the court's removal of the children from his custody before it terminated jurisdiction.

## I. BACKGROUND

### A. *Domestic Violence Between Father and Bobbie*

In April 2022, police were called to the home where Father, Bobbie, their four-year-old daughter H.T., and Bobbie's seventeen-year-old son M.C. were then living. M.C. called 911 after he heard Father and Bobbie have a loud argument and saw Bobbie bleeding.

When the police arrived, Bobbie had a swollen lip, had dried blood in and/or around her nose, and was extremely impaired by alcohol. Bobbie told one of the responding officers that she had run into Father's hand. Father was not present when the police arrived, but he was later detained by police.

---

[1]     A.T. and G.T. were fifteen and fourteen years old, respectively, when dependency proceedings commenced.

3

Bobbie spoke to a Los Angeles County Department of Children and Family Services (Department) social worker the same day the police were called. She said she had gone to a bar with Father, where she was hit by another woman. Both Father and Bobbie drank at the bar, but Bobbie believed Father drank less than she did because he was driving. On their way home, Father told Bobbie he was going to leave her because he was embarrassed by her behavior at the bar.

Once back at home, Bobbie begged Father not to leave and tried to prevent him from taking his clothes out of the closet. According to Bobbie, Father attempted to access the closet while Bobbie was blocking his way, causing the closet door to crack. Father left soon thereafter because he did not want to be arrested when the police arrived. Father used to be a police officer and thought he would be wrongfully charged with hitting Bobbie if he remained. Bobbie claimed Father did not hit her.

Bobbie additionally told the social worker there had been one previous domestic violence incident between her and Father approximately five years ago. On that occasion, the violence left Bobbie with a bump on her head and a scratch on her side. Bobbie also disclosed she and Father use to drink together frequently but she claimed they stopped doing so several months earlier because the drinking was causing arguments. Father had moved out of the home for approximately 10 months because of those arguments and he had only begun living back at the home for two to three months before the police were called on this most recent occasion.

When Father spoke to a social worker, his account of the April 2022 domestic violence that prompted M.C.'s 911 call matched Bobbie's description of what happened in all material

4

respects. M.C.'s account of what happened, however, was different. He reported that when Bobbie and Father returned home from the bar, there was no bruising or blood on Bobbie's face. Bobbie tersely said hello to him and went into her bedroom. Then, after Father entered the bedroom, M.C. heard wrestling sounds, lots of movement, and the sound of a punch. He entered the room, saw Father trying to push the closet door open to get his clothes, and saw Bobbie with a swollen lip and dried blood in and around her nose.

M.C. also told the interviewing social worker that Father and Bobbie get drunk a lot, their drinking leads to arguments, and they argue all the time. So far as M.C. knew, Bobbie and Father had two prior physical altercations: M.C. observed Father push Bobbie during an argument two years earlier and saw Father hit Bobbie with a branch once before their daughter H.T. was born. According to M.C., Bobbie's daughters C.F. and S.F. live with their father because they do not like the arguments between Bobbie and Father.

Bobbie's daughters C.F. and S.F. (who do not share a father with M.C.) provided similar statements about Bobbie and Father's relationship and their drinking habits. C.F., who was thirteen years old at the time of the interview, said Bobbie and Father drink beer and vodka heavily to the point that they get drunk and argue. C.F. believed Bobbie and Father engaged in two physical altercations during their relationship: an instance when Father pushed Bobbie into a door during an argument a few years prior and an occasion a year ago when Father pushed Bobbie into a planter in front of their apartment building (when the police arrived, Bobbie denied he pushed her). C.F. also explained Bobbie and Father had broken up and gotten back

5

together many times.  Twelve-year-old S.F. echoed C.F.'s report that Father pushed Bobbie into a planter, though she believed the incident occurred two years prior to the interview.  C.F. and S.F. moved into their father's home in August 2021 because they could no longer take the arguing between Bobbie and Father.  They usually visit Bobbie outside of her home, and when they occasionally go inside her home, they do not stay long.[2]

### B.    The Department Investigates Daughters' Welfare

Daughters were living with Mother when the Department began investigating the domestic violence and alcohol abuse involving Father and Bobbie.

During her interview with a Department social worker, Mother reported she was married to Father for 12 years and had a family law order in place from 2018 or 2019.  Mother and Father shared legal custody of G.T. and A.T. equally, but Mother had 70% physical custody and Father had 30%.  Father was supposed to have visits with the children every Thursday and every other Sunday, but Father was not consistent with his visits.  There was one incident during their marriage where Father attempted to hit Mother, but he did not make contact.

According to Mother, Father became a heavy drinker after they broke up.  He stopped drinking for five or six years at some point, but he thereafter started drinking again.  Mother informed the social worker she was aware Father had hit Bobbie in the

---

[2]    Other extended family members also reported Father and Bobbie broke up and got back together several times, and that the fighting between the two had been going on for years.

presence of Daughters before.  According to Mother, Bobbie and Father were both heavy drinkers.

A.T. told the Department that Father and Bobbie argue a lot.  When A.T. was 11, she heard something falling downstairs and later saw police placing handcuffs on Father.  She did not witness the incident, but she thinks Father pushed Bobbie down the stairs.  A.T. said Father and Bobbie drink, but she had not observed them looking or acting differently after doing so.

G.T. similarly reported Father and Bobbie argue a lot. During an incident a few years earlier, the police were called to the home when Father and Bobbie were arguing.  Father appeared to be drunk at the time, and he told G.T. to get in the car.  A police officer asked him if he was okay to drive children, Father said no, and they went back into the house.  G.T. reported Father and Bobbie drink, but she had not observed them to act differently.

C. *The Dependency Petition and Initial Court Proceedings*

In early May 2022, the Department filed a six-count dependency petition alleging A.T. and G.T. were at substantial risk of serious physical harm from, among other things, Father's domestic violence with Bobbie, Father's alcohol abuse, and Bobbie's unlimited access to Daughters despite her alcohol abuse. The court held a detention hearing and found a prima facie case existed that A.T. and G.T. were persons described by Welfare and

Institutions Code, section 300.[3]  The court detained A.T. and G.T. from Father and ordered them released to Mother's custody.

During another interview with the Department, A.T. reported she and G.T. stopped sleeping at Father's house because Father and Bobbie were always arguing, and it scared her and G.T.  A.T. said she had never seen Father hit Bobbie, but she mentioned she saw him push Bobbie down the stairs once.  A.T. said she had seen Father drink, but she was not scared of him when he drank and she did not think he had ever been intoxicated while driving with her in the car.  A.T. was not sure if Father was currently drinking.

G.T. said she had seen Father hit Bobbie once "a long time ago."  They were driving, both were drunk, they started to fight, and Father hit Bobbie on the arm.  She also said she was scared because Father and Bobbie were yelling at each other and Father was driving really fast.  G.T. said this happened "a long time ago."  G.T. additionally said Father and Bobbie "were always arguing[ ] and yelling at each other" and they would "always come home drunk."[4]  According to both A.T. and G.T., Bobbie was a mean drunk who would yell at them.

Mother stated Daughters had told her about Father and Bobbie fighting.  As a result, Mother attempted to obtain full custody of Daughters and attempted to minimize their visits with Father and Bobbie.  Mother once called the police and said she

---

[3]  Undesignated statutory references that follow are to the Welfare and Institutions Code.

[4]  At another point during the same interview, which took place in June 2022, G.T. said she had not seen Father drunk in "a long time."

8

did not want her daughters to go over for the weekend, but the police told her she could not prevent them from doing so because there was a custody order in place. In 2019, Father agreed Daughters would benefit from not sleeping over at his home and not having contact with Bobbie. Since then, they have not had contact with Bobbie. Visits with Father have been minimal, about once or twice per month, because Father would often cancel. Father's drinking was unpredictable. Mother would ask him not to drink with Daughters present, but he would always ask her to stay out of his personal life.

When interviewed, Father claimed there was never any physical fighting between him and Bobbie. He admitted to arguing with Bobbie in front of Daughters, but he maintained it was never physical. He also said Daughters had not been around Father and Bobbie together for over a year and a half. When asked specifically about the confrontation in the car described by G.T., Father said he hit the car's arm rest, not Bobbie, and denied he had been drinking before driving.[5] Father also denied abusing alcohol, stating he would drink on the weekends but he was never intoxicated and had never been intoxicated in front of Daughters. Father reported he was currently separated from Bobbie and did not want to continue a relationship with her.

D.    *The Jurisdiction and Disposition Hearing*

The court held a jurisdiction and disposition hearing in July 2022. The court amended the petition by interlineation to strike allegations against Mother, dismissed the count alleging

---

[5]    Father did have a prior conviction for driving under the influence as a result of an arrest in January 2000.

9

was a substantial risk Daughters would suffer serious physical harm inflicted non-accidentally (count a-1), and sustained the remaining counts (b-1, b-2, b-3, j-1, and j-2) with amendments as to Father.

As amended and sustained by the juvenile court, count b-1 of the petition states Father and Bobbie have a history of engaging in violent altercations in the presence of Daughters and their half-sibling, H.T., which places Daughters at substantial risk of serious physical harm. Count b-2 states Father is a current abuser of alcohol, which renders him unable to provide Daughters with regular care and places them at substantial risk of serious physical harm. Count b-3 states Father created a detrimental and endangering situation for Daughters by allowing Bobbie to have unlimited access to them when he knew Bobbie was an abuser of alcohol. Counts j-1 and j-2 state Daughters are at risk as a result of neglect or abuse of H.T., Daughters' half-sibling.

After sustaining the aforementioned counts of the dependency petition, the juvenile court maintained the order removing Daughters from Father's custody and placing them with Mother. The court then found the conditions that would justify the initial assumption of jurisdiction no longer existed, and were not likely to exist if supervision was withdrawn. The court terminated jurisdiction with a juvenile custody order awarding Mother sole legal and physical custody, with monitored visitation for Father.[6]

---

[6] Prior to issuance of the court's order, the juvenile court asked Father for his position on the issue of disposition. Father agreed with terminating jurisdiction but asked the court to order shared custody and grant him unmonitored visitation.

10

## II. DISCUSSION

Substantial evidence supports the trial court's jurisdiction and disposition findings. Father has a long-standing alcohol abuse problem that he has refused to acknowledge or address. The record reflects the problem is ongoing, he has driven intoxicated with Daughters in the car, and he previously declined Mother's requests to curtail his drinking when Daughters are in his care. This suffices to demonstrate there is a risk of harm to Daughters based on Father's alcohol abuse and there were no means short of removal available to protect them.

### A. Father's Alcohol Abuse Justified Dependency Jurisdiction

For a child to be found a dependent of the juvenile court under section 300, subdivision (b)(1), the court must find the child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child. "'In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them.'" (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

The requisite substantial evidence supports the juvenile court's decision to sustain the alcohol abuse dependency jurisdiction count of the petition. Father had been drinking heavily for many years (albeit with one reported period of extended sobriety), and his alcohol abuse led to a conviction for driving under the influence for an incident in January 2000. The record additionally reflects Father's alcohol abuse had also previously endangered Daughters. Father drove drunk with

11

Daughters in the car at least once while engaged in a fight with Bobbie. He attempted to do so again at least one other time when Father told Daughters to get into his car while he was drunk—only aborting the effort to drive away with them when a police officer asked if he was okay to drive children. Daughters also confirmed they had seen Father drinking or drunk in the past.

Statements made by other children involved in Father's life established he was still abusing alcohol in the days leading up to the dependency proceedings. C.F., who lived with Bobbie and Father until August 2021, stated Bobbie and Father drank beer and vodka heavily to the point of getting drunk and arguing. And M.C., who lived with Father and Bobbie at the time of the incident that led to the initiation of these proceedings, reported Father and Bobbie got drunk a lot and their drinking led to arguments.

Importantly, when asked about his drinking, Father denied that he had an alcohol abuse problem and denied that his use of alcohol placed Daughters at risk of harm. Additionally, when Mother asked Father not to drink when Daughters were present, Father told her to stay out of his personal life.

These facts were sufficient to support jurisdiction. In particular, Father's attempts to drive with Daughters while intoxicated put them at substantial risk of serious physical harm. (See *In re N.M.* (2011) 197 Cal.App.4th 159, 165 [court need not wait until child has been seriously injured to assume jurisdiction].) That Father refused to acknowledge his alcohol abuse or curtail his consumption while around Daughters at

12

Mother's request demonstrates the risk of harm was ongoing.[7] (E.g., *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"].)

Because substantial evidence supports the dependency jurisdiction finding based on a risk of harm from Father's abuse of alcohol, we need not discuss the evidence that supports the juvenile court's jurisdiction findings on other counts of the dependency petition. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

### B. *Substantial Evidence Supports the Removal Order*

"At the disposition[ ] hearing, a dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if

---

[7] Father's argument that there was no risk of harm to Daughters at the time of the jurisdiction hearing focuses on whether they continued to see Bobbie at that time such that they may have been at risk of harm from Father and Bobbie's domestic violence. As to the risk of harm to Daughters from his alcohol abuse, on the other hand, Father chiefly asserts the concerns about his consumption of alcohol were interrelated with his relationship with Bobbie. While it is true that the incidents of alcohol abuse often appeared to coincide with issues related to Father's relationship with Bobbie, there is no evidence cessation of the one would ameliorate the risk of the other. Even assuming Mother and Father's voluntary arrangements sufficiently addressed concerns involving Bobbie, the record does not reflect they resolved concerns regarding Father's alcohol abuse. The juvenile court reasonably found Daughters were at risk of harm from Father's alcohol abuse at the time of its jurisdiction finding.

13

returned home, and that there are no reasonable means to protect the child's physical health without removing the child . . . ." (*In re D.B.* (2018) 26 Cal.App.5th 320, 328; see also § 361, subd. (c)(1).)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) "'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.) In addition, the court may consider "the parent's response to the conditions that gave rise to juvenile court intervention." (*D.B., supra*, 26 Cal.App.5th at 332.) We review a removal order for substantial evidence. (*In re V.L.* (2020) 54 Cal.App.5th 147, 154; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005, 1011.)

Though the juvenile court did not directly address removal at the disposition hearing, the minute order from the hearing states the court removed Daughters from Father prior to terminating jurisdiction. Father contends the removal order must be reversed because no substantial evidence supports a conclusion that there was a substantial danger to Daughters'

well-being and no reasonable means short of removal existed to protect them.[8]

Substantial evidence, including M.C.'s statements regarding Father's drinking habits, shows removal was proper. The record reflects one incident during which Father drove drunk with Daughters, which he denies occurred, and another incident in which the only reason he did not drive with Daughters while under the influence was the presence of a police officer. "The inference from his denial is that he is less likely to change his behavior in the future." (*V.L., supra*, 54 Cal.App.5th at 156.) While Father argues the juvenile court failed to consider less drastic measures than removal, the only such measure he hypothesizes is an order that Bobbie not be present during his custody time. While that suggestion might ameliorate other concerns raised in the dependency proceedings, it would not have removed risk of harm due to Father's unacknowledged alcohol abuse problem. Father's unwillingness to address that problem is underscored by his negative response to Mother's request that he not drink when Daughters were in his care. Further, Mother explained Father's drinking is unpredictable, a fact that would make it difficult to rely on means short of removal to protect Daughters from Father's alcohol abuse.

---

[8]    As stated earlier, Father does not challenge the order giving Mother full custody and terminating dependency jurisdiction.

## DISPOSITION

The jurisdiction findings and disposition order are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

KIM, J.